TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00108-CR






James Kellough, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0974657, HONORABLE JON N. WISSER, JUDGE PRESIDING







 A jury found appellant James Kellough guilty of aggravated robbery with a deadly
weapon and assessed punishment at imprisonment for twenty years and a $3000 fine. See Tex.
Penal Code Ann. §§ 29.02, 29.03(a)(2) (West 1994). The district court rendered judgment
consistent with the jury's verdict. Appellant contends the evidence is legally insufficient to sustain
the jury's verdict. We will affirm.

 Terry Aultman and Mark Heredia shared an apartment in South Austin. On June
12, 1997, around 9:00 p.m., Aultman and his girlfriend, Linda Cano, retired to his bedroom. 
They were awakened around 10:50 p.m. by Heredia, who told them that a group of unknown
persons were knocking at the door. When the knocking stopped and neither Aultman nor Heredia
could see anyone from their window, Aultman and Cano returned to bed.

 A few moments later, four men forced their way into the apartment. Two of the
men, later identified as Dennis Oville and appellant James Kellough, kicked open the door to
Aultman's bedroom. Aultman and Cano testified that Oville had a knife and Kellough had a gun. 
Cano called 911, but dropped the phone when Kellough told her to do so. Kellough then ordered
Aultman out of the bedroom and onto the floor. He and Oville asked Aultman where the money
was, but Aultman testified that he had no money to give them.

 At some point Cano was told to leave Aultman's bedroom. When she entered the
dining area, she saw two more intruders. One of the men, who was later identified as Joseph
Gaines, was described by Cano as muscular and shirtless. The other, Martin Bradshaw, was
described as young and dressed in baggy shorts and carrying a knife.

 Kellough and Oville then went into Heredia's bedroom. Kellough found Heredia
hiding in the closet. Kellough pointed a gun in Heredia's face, ordered him to his knees, kicked
him in the face, and began tearing his bedroom apart. Heredia testified that Kellough repeatedly
asked him, "Where's your money?" Heredia responded, "I don't have it. I don't have it." 
Kellough eventually took some money that was scattered around the room, including a $50 bill,
and also grabbed a cellular phone and Rolex watch.

 Outside Heredia's bedroom Bradshaw yelled, "Let's just kill these motherf-----s!" 
Then another intruder said, "We've been here too long." At that point, all four men left the
apartment through the front door. Police officers subsequently stopped four men at a convenience
store down the street from the apartment. Aultman, Heredia, and Cano went to the convenience
store and identified the four men as the four intruders who broke into the apartment.

Kellough argues that his identification as one of the robbers was "tenuous." He
notes that unlike Oville, Gaines, and Bradshaw, the fourth robber wore a mask. He asserts that
he was identified as the fourth, masked robber only because he was with the others when they
were arrested. As support for his argument, Kellough points out that his fingerprints were not
found at the scene of the robbery, and he did not have any stolen property in his possession when
arrested. Kellough attacks the credibility of the State's witnesses by pointing out discrepancies
in their testimony.

In determining the legal sufficiency of the evidence to support a criminal conviction,
the question is whether, after viewing all the evidence in the light most favorable to the verdict,
any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). The jury is the exclusive
judge of the credibility of the witnesses and the weight to be given their testimony, and may accept
or reject all or any part of the evidence. Castellano v. State, 810 S.W.2d 800, 807 (Tex.
App.--Austin 1991, no pet.); Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979).

In essence, Kellough asks this Court to view the evidence in the light most favorable
to him and to disregard the jury's credibility determinations and findings of fact. We decline to
do so. Viewing the evidence in the light most favorable to the verdict, we hold that any rational
trier of could have found Kellough guilty of aggravated robbery. The point of error is overruled.

The judgment of conviction is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 12, 1999

Do Not Publish



t. Appellant contends the evidence is legally insufficient to sustain
the jury's verdict. We will affirm.

 Terry Aultman and Mark Heredia shared an apartment in South Austin. On June
12, 1997, around 9:00 p.m., Aultman and his girlfriend, Linda Cano, retired to his bedroom. 
They were awakened around 10:50 p.m. by Heredia, who told them that a group of unknown
persons were knocking at the door. When the knocking stopped and neither Aultman nor Heredia
could see anyone from their window, Aultman and Cano returned to bed.

 A few moments later, four men forced their way into the apartment. Two of the
men, later identified as Dennis Oville and appellant James Kellough, kicked open the door to
Aultman's bedroom. Aultman and Cano testified that Oville had a knife and Kellough had a gun. 
Cano called 911, but dropped the phone when Kellough told her to do so. Kellough then ordered
Aultman out of the bedroom and onto the floor. He and Oville asked Aultman where the money
was, but Aultman testified that he had no money to give them.

 At some point Cano was told to leave Aultman's bedroom. When she entered the
dining area, she saw two more intruders. One of the men, who was later identified as Joseph
Gaines, was described by Cano as muscular and shirtless. The other, Martin Bradshaw, was
described as young and dressed in baggy shorts and carrying a knife.

 Kellough and Oville then went into Heredia's bedroom. Kellough found Heredia
hiding in the closet. Kellough pointed a gun in Heredia's face, ordered him to his knees, kicked
him in the face, and began tearing his bedroom apart. Heredia testified that Kellough repeatedly
asked him, "Where's your money?" Heredia responded, "I don't have it. I don't have it." 
Kellough eventually took some money that was scattered around the room, including a $50 bill,
and also grabbed a cellular phone and Rolex watch.

 Outside Heredia's bedroom Bradshaw yelled, "Let's just kill these motherf-----s!" 
Then another intruder said, "We've been here too long." At that point, all four men left the
apartment through the front door. Police officers subsequently stopped four men at a convenience
store down the street from the apartment. Aultman, Heredia, and Cano went to the convenience
store and identified the four men as the four intruders who broke into the apartment.

Kellough argues that his identification as one of the robbers was "tenuous." He
notes that unlike Oville, Gaines, and Bradshaw, the fourth robber wore a mask. He asserts that
he was identified as the fourth, masked robber only because he was with the others when they
were arrested. As support for his argument, Kellough points out that his fingerprints were not
found at the scene of the robbery, and he did not have any stolen property in his possession when
arrested. Kellough attacks the credibility of the State's witnesses by pointing out discrepancies
in their testimony.

In determining the legal sufficiency of the evidence to supp